IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

JAMES E. GRAHAM II; DENNIS ADKINS;
ROGER WRISTON; and DAVID B. POLK;
on behalf of themselves and
others similarly situated; and
UNITED MINE WORKERS OF AMERICA
INTERNATIONAL UNION,

    Plaintiffs,

v.                                                  CIVIL ACTION NO. 1:19-cv-00597

JUSTICE ENERGY CO. INC.;
KEYSTONE SERVICE INDUSTRIES, INC.;
BLUESTONE COAL CORPORATION;
DOUBLE-BONUS COAL CO.; and
SOUTHERN COAL CORPORATION,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

The Defendants, Justice Energy Co., Inc., Keystone Service Industries, Inc., Bluestone Coal Corporation, Double-Bonus Coal Co., and Southern Coal Corporation (collectively "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file this Memorandum of Law in Support of their Motion to Dismiss the Complaint filed by Plaintiffs James E. Graham II, Dennis Adkins, Roger Wriston, David B. Polk ("UMWA Miners"), and the United Mine Workers of America International Union (collectively "UMWA"). Plaintiffs have failed to state a claim upon which relief can be granted because:

1)      With regard to their claims asserted pursuant to Section 301 of the Labor and Management Relations Act of 1947 (29 U.S.C. §185), Plaintiffs have failed to exhaust or allege

that they have exhausted the mandatory arbitral remedies provided by the arbitration procedure contained in Article XXIII of the Parties' collective bargaining agreement, the National Bituminous Coal Wage Agreement of 2016 (the "NBCWA" or "Agreement"), to which the Parties must submit all disputes arising between them.

2) With regard to their claims asserted pursuant to the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq., Plaintiffs have failed to exhaust or allege that they have exhausted the mandatory claims remedies and procedures provided by the applicable Plan Documents for the Health Plan.

All of Plaintiffs' claims in law and equity arise solely from these statutory sources. Because Plaintiffs have failed to state a claim under these two statutes, their Complaint must be dismissed as a matter of law.

## I.     FACTS

Plaintiffs include four individual miners represented by the UMWA, who were employed by Defendants, pursuant to a collective bargaining agreement, the National Bituminous Coal Wage Agreement of 2016. A copy of the relevant provisions of the *National Bituminous Coal Wage Agreement of 2016* is attached as Motion Ex. A. The 2016 Agreement has been in force continually since August 15, 2016 and has remained in effect to the present. *See*, Art. XXIX of the Agreement (listing August 15, 2016 as the first day of the Agreement and providing that it will continue in force until December 31, 2021). The other named Plaintiff in this matter is the UMWA, which is a labor organization that represents hourly workers at certain mines operated by at least one of the Defendants.[1]

---

[1] The Complaint also states in the style that it is filed on behalf of "others similarly situated," however, there are no Rule 23 allegations in the Complaint so this is mere surplusage. Moreover, the points of law in this Motion would apply equally if there were class allegations.

The crux of Plaintiffs' claims is that the Defendants failed to pay for certain UMWA members' health care expenses which Plaintiffs now seek to recover through this lawsuit. The Complaint provides almost no detail as to which expenses are were allegedly not paid and merely identifies them in summary categories.

Of course, Plaintiffs' claims must be reviewed against the backdrop of the statutes and Agreement upon which they are predicated. The NBCWA contains specific, mandatory and binding grievance and arbitration procedures. First, the Agreement encourages resolution of disputes. The Agreement states:

> Should differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions in this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the Mine, an earnest effort shall be made to settle such differences at the earliest practicable time.

Agreement, Art. XXIII(c).

The Agreement further states that "[d]isputes under this Agreement shall be resolved" through a multi-step grievance and **arbitration** procedure, resulting in a "final" arbitral decision if the Parties are unable to settle their dispute. *Id.* at p. 68-69.

The Agreement clearly preserves the intent of the parties to avoid making claims in court until all other efforts have been exhausted:

> The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, **it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.**
> The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship.

*Id.* at Art. XXVII.(emphasis added)

There are two exceptions to the mandatory arbitration requirements listed in Article XXVII of the Agreement. First, the Agreement permits the UMWA to "to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship." *Id.* Of course, no successorship is alleged in the Complaint here. The second exception is where a dispute is "national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry." *Id.* Here, there is no allegation in the Complaint that the dispute is "national in character," nor is there any allegation in the Complaint that the UMWA has sought collective bargaining with the Bituminous Coal Operators' Association related to the issues in the Complaint. The absence of an allegation that these exceptions apply is fatal to Plaintiffs' claims.

Plaintiffs' claims are based upon the provision of Health Care Coverage. By contract, Defendants are required to provide certain health care benefits for retirees. See, Article XX of the Agreement. However, the Agreement merely provides a general description of the required benefits. Moreover, Article XX (a), p. 29 provides: "The benefits to be provided are as set forth under **separate plans** and trusts referred to in Sections (b) and (c) of this Article" (emphasis added) and "The specific provisions of the **plans will govern** in the event of any inconsistencies between the general description [in the Agreement] and the plans." *Id.* (emphasis added).

Further, Article XX, p. 35 provides:

> The following is a general description of certain information contained in the UMWA 1974 Pension Plan and Trust, and the individual Employer's benefit plan. This description is intended merely to highlight certain information; it is not a complete statement of all of the provisions of the Plans and Trusts, **nor is it intended to be a Summary Plan Description** as defined in the Employee Retirement Income Security Act of 1974, and is qualified in its entirety by, and subject to the more detailed information contained in the Plans and Trusts…(emphasis added).

Article XX(c)(10), p. 43 states:

> Active miners and their surviving spouses and dependents, and pensioners, their dependents, and surviving spouses receiving pensions from the 1974 Pension Plan, will receive health care provided by their Employer through insurance carriers. Each Employer for which BCOA was authorized to represent for the negotiation of this Agreement shall have the option of using the UMWA Health and Retirement Funds to administer such benefits. **The Employer shall have sole discretion to cease using the UMWA Funds for the administration of its benefits** at any time and for any reason, provided that it commences the provision of such benefits through its individual Employer Plan without disruption. (emphasis added).

Thus, Article XX of the Agreement allows Employers, including the employer Defendants, an option of using a private carrier, at their sole discretion, to provide health care.

In this case, the Defendants' self-insured plan was administered by ACS Health Services, Inc. from 2016 through June 30, 2018 and by The Health Plan from July 1, 2018 to the present. A copy of the relevant portions of the Summary Plan Descriptions for the years 2016-2019 are attached at Motion Exhibits B and C. For purposes of this Motion, the coverage provided since 2016 is referred to collectively as the "Plans." During the time period at issue, the health care coverage provided by the Defendants qualified as ERISA health plans.

As ERISA Plans, the coverage provides very specific and mandatory requirements for Claims and Dispute Resolution. Post-service Claims (that is those claims filed after the medical service is rendered) must be filed within 180 days from the date of the service. *e.g. Ex. B,* p. 36 and *Ex. C*, p. 46. The Claims Procedure is a multi-step process that must be followed before Plaintiff may seek relief from a District Court.

The first step is that the Claimant must file a claim. Upon receipt of a claim, the "Third Party Administrator" (i.e. ACS or The Health Plan, not Defendants) notifies the claimant of any adverse benefit determination. *Ex. B*, p. 35, *Ex. C*. p. 49.

Under both Plans, if the claimant is unsatisfied with the decision, the claimant must request a review or appeal of the adverse Decision. For example, The Health Plan[2] provides the following:

> ***Full and Fair Review of All Claims***
> In cases where a claim for benefits is denied, in whole or in part, and the Claimant believes the claim has been denied wrongly, the Claimant may appeal the denial and review pertinent documents. The claims procedures of this Plan provide a Claimant with a reasonable opportunity for a full and fair review of a claim and Adverse Benefit Determination. *Ex. C.* at 49.

Further, the SPD provides:

> The Claimant must file the **appeal** in writing …within 180 days following receipt of the notice of an Adverse Benefit Determination….
> For Post-service Claims. To file any appeal in writing, the Claimant's appeal must be addressed as follows:
>
> The Health Plan
> 1110 Main Street
> Wheeling, WV 26003
> Phone: 1-888-816-3096.
>
> It shall be the responsibility of the Claimant or authorized representative to submit an appeal under the provisions of the Plan….**If the Claimant provides all of the required information, it may be that the expenses will be eligible for payment under the Plan.** *Id.* p. 50 (Emphasis Added)[3]

The Plan Administrator then decides whether the services are covered and notifies the Claimant. *Id.*, p. 51. This is the first review.

The next step is a second review. The 2018 SPD states: "The Claimant must file an appeal regarding a Post-service claim and applicable Adverse Benefit Determination, in writing within 60 days following receipt of the notice of the first level Adverse Benefit Determination." *Id.,* p. 52. Both the 2016 and 2018 SPDs require two appeals. *Ex B*, p. 38; *Ex. C.,* p. 52.

In this lawsuit, Plaintiffs apparently did nothing to preserve Claimants rights to utilize either the Two-level Review process in the SPDs tor the grievance and arbitration provisions of

---

[2] The Appeal process under the plan administered by ACS Benefits Services, Inc. begins on page 36. *See Ex. B*
[3] The Plaintiffs do not make any allegations that they appealed any adverse determinations.

the Agreement. Rather, Plaintiffs attempt an end-run around these well-known mandatory requirements. Importantly, there is also no allegation in the Complaint that the Plaintiffs attempted to utilize the contractual grievance and arbitration procedures to resolve the instant dispute. Rather, the UMWA, after sending a very short letter with no specific detail of medical expenses which were allegedly not paid, skipped the Plans' dispute procedures and the grievance and arbitration procedures of the Agreement.[4]

The UMWA then filed this Complaint in the District Court on August 15, 2019, alleging that the Defendants violated the NBCWA, Section 301 of the Labor-Management Relations Act (the "LMRA") (29 U.S.C. § 185) and Employee Retirement Security Act ("ERISA") (29 U.S.C. § 1001 et. seq.) by failing to pay Medical and Prescription Benefit Claims, notwithstanding that such claims have never been submitted to arbitration under the Agreement or processed pursuant to the dispute resolution procedures required in the Health Plan Documents.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the Plaintiff's Complaint to determine whether the Plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashley v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court will "accept all the well-pleaded allegations of the complaint as true" and

---

[4] The letter attached as Complaint Exhibit 5 was so short on details and contained no itemization of medical expenses which were allegedly unpaid. Without such information, the letter would have been inadequate to even file an ERISA dispute with the Health Plan Administrator if that had been the intention.

7

"construe them in the light most favorable to the plaintiff," these "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253, (4th Cir. 2009). That is, the plaintiff must "[nudge its] claims across the line from conceivable to plausible" in order to avoid dismissal. *Id.* This "plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully," and complaints that "do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Iqbal*, 556 U.S. at 678.

These general legal standards are further complicated in the labor relations field because the Agreement here requires arbitration and ERISA requires that any and all health benefit claim disputes must be appealed pursuant to the terms of the applicable health plan.

### III. ARGUMENT

**A. Summary**

The Plaintiffs cannot state plausible claims for relief under Section 301 of the Labor-Management Relations Act (the "LMRA") (29 U.S.C. § 185) and Employee Retirement Security Act ("ERISA") (29 U.S.C. § 1001 et. seq.), because they have failed to submit their dispute with the Defendants to the mandatory grievance and arbitration procedures of the NBCWA and the mandatory claim procedures of the applicable Health Plan SPDs. The Fourth Circuit aptly described the "exhaustion of remedies" requirement when it wrote:

> the out-of-hand rejection of these internal procedures flies in the face of the philosophy underlying the LMRDA. Democratic processes atrophy when they are not exercised; union members will have no interest in improving their organizations' internal adjustment procedures if they never are required to use them.

*Wiglesworth v. Teamsters Local Union No. 592*, 552 F.2d 1027, 1031 (4th Cir. 1976)

Here, the Plaintiffs are attempting to avoid exercising their internal adjustment procedures and seek to circumvent the "exhaustion of administrative remedies" requirements of the Agreement and of the provisions set forth in the Plans.

**B. The Plaintiffs failed to exhaust or allege they exhausted the mandatory arbitral remedies of the Agreement.**

It is a well-known requirement that disputes between UMWA Members, the UMWA and Employers must be submitted to arbitration. The UMWA relied on this very point of law to persuade the District Court for the Northern District of West Virginia to dismiss a lawsuit by an employer against the UMWA. In *Consolidation Coal Co. v. United Mine Workers of Am.*, 191 F. Supp. 3d 572 (N.D.W. Va. 2016), an Employer sued the UMWA alleging that the Union violated Section 301 of the Labor and Management Relations Act by its "anti-management campaign." *Id.* at 575. The UMWA filed a Motion to Dismiss, much like this one, asserting that all disputes, except for very limited exceptions mentioned above, must be submitted to arbitration. In this regard, the Court described the UMWA's position thusly:

> The UMWA argues that the Court should dismiss MAEI's complaint for failure to exhaust mandatory arbitral remedies before filing suit in district court (Dkt. No. 7-1 at 9). It points to Articles XXVII and XXVIII of the CBA, which outline a detailed grievance process, including arbitration, and an agreement to settle all disputes and claims "unless national in character" by the grievance process "without recourse to the courts." CBA, Art. XXVII, Art. XXVIII(c). The UMWA urges the Court to follow Domino Sugar Corp. v. Sugar Workers Local Union 392 of the United Food & Com. Workers Int'l Union, 10 F.3d 1064, 1066 (4th Cir.1993), which provides a presumption in favor of arbitrability unless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute (Dkt. No. 7-1 at 8). Id. at 580.

In *Consolidation Coal*, the Court agreed with the UMWA. The Court first noted:

> The question of arbitrability is to be determined by the Court unless the parties "clearly and unmistakably" provide otherwise. United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Id. at 580.

The Court further noted:

> When a labor agreement contains an arbitration provision, courts must find in favor of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Domino Sugar*, 10 F.3d at 1069 (quoting *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks, citations, and emphasis omitted)). *Id*.

The Court interpreted Articles XXVIII, the same arbitration clause at issue here, and dismissed the Complaint on the Motion of the UMWA, holding:

> Article XXVIII confirms the broad nature of the parties' agreement to arbitrate. It specifies that the parties should use the dispute resolution procedure to resolve "differences ... between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement ...," "differences ... about matters not specifically mentioned in this Agreement ...," or "any local trouble of any kind ... at the mine." CBA, Article XXVIII(c).
> The dispute resolution process involves multiple steps. *Id.* at 581.

The Court noted that

> binding Fourth Circuit precedent directs the Court to submit the case to arbitration. Akin to this case, Domino Sugar dealt with an arbitration clause that lacked a provision requiring the employer to arbitrate a dispute. 10 F.3d at 1069. The Fourth Circuit rejected the same argument advanced by MAEI, noting in doing so that it "must interpret a collective bargaining agreement as imposing arbitration requirements on an employer unless 'there is an express, flat limitation that arbitration boards should consider only employee grievances.' " Id. (quoting *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)). Thus, even if the CBA were silent, the Court would interpret it as requiring MAEI to arbitrate.

Finally, the Court in *Consolidation* held that Rule 12(b)(6) dismissal was appropriate:

> the Fourth Circuit, in *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.2001), held that dismissal is proper when all issues in a lawsuit are arbitrable.

Well-settled Fourth Circuit precedent established that contractual provisions like those at issue here require the parties to arbitrate their disputes before resorting to the courts. *See, e.g., Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1069 (4th Cir. 1993). Because the NBCWA provides for mandatory grievance procedures and the Supreme Court has

articulated a strong federal preference for that mechanism, only "the most forceful evidence of a purpose to exclude a claim from arbitration can prevail" to allow the Plaintiffs to bring their dispute directly to this Court. *H.K. Porter Co. v. Local 37, United Steelworkers*, 400 F.2d, 691, 694 (4th Cir. 1968) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 582 (1960)); *see also AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986).

The Agreement directs the Parties to resolve "*any* local trouble of *any* kind" through the grievance and arbitration procedure and requires "that *all* disputes and claims which are not settled by agreement" to be submitted to that procedure. *Ex. A* at Art. XXIII(c), XXVII (emphasis added).

The provisions here are markedly like those of the collective bargaining agreement in *Domino Sugar*, which – like the NBCWA – lacked any express requirement that the employer submit disputes to the grievance and arbitration procedure. The agreement's provision that this procedure would "serve as a means for peaceful settlement of *all* disputes that may arise between…the Company and its employees," however, was enough for the Fourth Circuit to hold that the employer was required to exhaust arbitral remedies before bringing its dispute with the union to court. *Domino Sugar,* 10 F.3d at 1070 (emphasis added). The NBCWA provisions likewise represent forceful evidence of the parties' intent for the grievance and arbitration process to serve as the mandatory means of resolving both employee and UMWA complaints.

The Plaintiffs, therefore, are clearly required to arbitrate their dispute with the Defendants under the terms of the NBCWA before resorting to this Court. The preponderance of the evidence, in the form of well-settled Fourth Circuit law, indicates that the Agreement required them to grieve the Defendants' alleged contractual violations and to exhaust their arbitral remedies. Under these circumstances, the Plaintiffs have failed to make enough factual allegations to justify their request for judicial relief or to make a plausible claim for such relief – even when the operative facts are

construed in a favorable light. Given the content of the NBCWA and the governing law in the Fourth Circuit, it is impossible to make a reasonable inference that the Plaintiffs are entitled to bring their dispute before this Court. This Court, therefore, should dismiss the Plaintiffs' claim under Rule 12(b)(6).

**B. The Plaintiffs failed to exhaust or allege they exhausted the mandatory claims review procedures in the Plans' Summary Plan Descriptions.**

It is a well-known requirement that claims decisions and claim reviews are first vested within the province of the Administrator of an ERISA Health Plan. Unless and until these procedures are exhausted, the Courts will not intervene.

29 U.S.C. § 1133 and 1135 requires that every employee welfare plan have in place a means by which a claimant can appeal any denial of benefits. Plaintiffs make no allegation that the procedures in the Defendants' Health Plan SPDs are inadequate or fail to meet the ERISA requirements. Accordingly, the procedures and policies in the SPD's must be followed and exhausted before a civil action may be filed under 29 U.S.C. § 1132. This concept is known as "exhaustion of remedies" and it requires a claimant to exhaust the internal administrative procedures and remedies provided by an employee benefit plan.

In *Makar v. Health Care Corp. of Mid-Atl*. (CareFirst), 872 F.2d 80, 83 (4th Cir. 1989), the Fourth Circuit dismissed a Complaint where a Plaintiff failed to "exhaust" the claim requirements, holding:

> By preventing premature interference with an employee benefit plan's remedial provisions, the exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions. *Amato*, 618 F.2d at 567–68. Indeed, subsequent court action may be unnecessary in many cases because the plan's own procedures will resolve many claims. *See generally Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153, 156 (4th Cir.1984)

The Court reasoned that:

> Congress intended **plan fiduciaries, not the federal courts, to have primary responsibility for claims processing**. *Kross,* 701 F.2d at 1244; *Challenger v. Local Union No. 1 of the Int'l Bridge, Structural & Ornamental Ironworkers, AFL–CIO,* 619 F.2d 645, 649 (7th Cir.1980). Id. at 83.

Similarly, in *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D. N.C. 1978), one District Court dismissed a Plaintiffs' ERISA claims where the employee had not exhausted the claims resolution procedures in the Plan. In doing so, the Court succinctly explained the importance of the exhaustion requirements of ERISA. The Court noted that the exhaustion requirements are like those for a Section 301 claim. In this regard, the Court stated:

> An examination of the underlying ERISA policies, interpreted analogously to the development of federal law under LMRA s 301, leads the court to conclude that Congress intended a claimant to exhaust his interfund remedies before seeking federal court review (with two exceptions noted Infra ). First, Section 1133 of the Act specifically requires the establishment of claims procedures, and the Secretary of Labor, pursuant to 29 U.S.C. s 1135, has promulgated extensive guidelines to implement these procedures. Much like the labor grievance system, this claim appeals mechanism is designed to reduce frivolous claims, promote the consistent treatment of claims, and create a nonadversarial method of claims settlement. *Id* at 819 (citing *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The Court further noted that the reason for the exhaustion requirement in ERISA was that: "Congress was particularly concerned with outlining a private insurance system that would operate efficiently….If claimants were allowed to litigate the validity of their claims before a final trustee decision was rendered, the costs of dispute settlement would increase markedly for employers." *Id.* Finally, the Court acknowledged that Congress granted "broad managerial discretion granted trustees under the ERISA statutory provisions indicates a Congressional intent that they be primarily responsible for establishing and operating the claims procedures. *Id.,* citing *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518, 527 (N.D.Cal.1977). The

Court also noted that if the trustee's decisions could be challenged when incomplete, their ability to expertly and efficiently manage the fund would be undermined, and the burden on the federal courts increased due to frivolous suits. *See Rothlein v. Armour & Company, Inc.*, 391 F.2d 574, 578-79, n. 21 (3rd Cir. 1968).

Here, Plaintiffs have not exhausted their administrative remedies provided for by the Health Plans, nor do they allege that they have done so. Accordingly, under the well-recognized authority of *Makar*, supra, the Complaint should be dismissed.

**C. Plaintiffs have failed to plead any legitimate exception to the LMRA arbitration requirement and the ERISA claims procedures.**

Here, the UMWA certainly anticipated that Defendants would move to Dismiss the Complaint, notwithstanding that Plaintiffs fail to even assert that they are unable to grieve the dispute regarding breaches of the Agreement. In this regard, Plaintiffs seek to avoid the exhaustion requirement by asserting that Defendants frustrated the Arbitration Process.[5] *See* Complaint, Paras. 20-23. Plaintiffs allege that Defendant did not resolve this matter after Plaintiffs sent and re-sent them a letter. *See* Complaint Exhibit 5. (Complaint, Para. 20). Plaintiffs further allege that Article XX, Section (e)(5) (Page 34) of the Agreement provides for submission of *certain* Health Plan Disputes to the Trustees of the UMWA Health and Retirement Funds "Resolution of Dispute" ("ROD") Process and further asserting that Defendants have failed to contribute funds to the ROD trust and effectively withdrawn from the ROD process. (Complaint, Paras. 22-23).

---

[5] In Taylor, supra, the Court recognized two exceptions to exhaustion: 1) "that following the designated procedures would be futile" *Taylor, supra* at 819, *citing Glover v. St. Louis-San Francisco Railway Company*, 393 U.S. 324, 330-331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) and 2) "where a claimant is "wrongfully" denied meaningful access to the inter-fund procedures. *Id.*, *citing Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and *Nuest v. Westinghouse Air Brake Company*, 313 F.Supp. 1228, 1233 (S.D.Ill.1970). Plaintiffs do not allege 'futility." How can they? They did not try.

14

These arguments ring hollow for several reasons. First, the letter from the UMWA did not meet the fundamental requirements for either a grievance under the Agreement, or a Claim under either Plans' SPD. *See, Ex. C*, p. 46 (requiring date of service, identity of provider, place of service, diagnosis and procedure codes, and amount of the charges); *Ex. B*, p. 38 (Items such as dates of procedure, procedure, itemized bill, provider, etc.). In other words, regardless of whether Defendants responded to the UMWA letter, the Plaintiffs still skipped all the steps necessary to avoid an exhaustion defense. This is fatal to Plaintiffs' claim.[6] Second, a close reading of Article XX, Section (e)(5) (page 34 of the Agreement) demonstrates that it clearly does not apply to claims processing, nor have Plaintiffs even identified any portion of the Plan that they dispute. Finally, Section (e)(5) does not seem to apply until the Plaintiffs have attempted to resolve their claims through the claim review process of either Plans' SPD, or the grievance and arbitration provisions of the Agreement. To the contrary, here Plaintiffs are attempting to use a post-exhaustion remedy to excuse pre-exhaustion defects. Moreover, even if Article XX, Section (e)(5) somehow did apply, which it does not, Plaintiffs did not even ask Defendants to resolve their disputes through the ROD process. Again, Plaintiffs want to jump all the steps they agreed to and turn the District Court into a "Claims Administrator/Judicial Arbitrator." The parties did not intend this when they reached the Agreement and Congress did not intend this when it passed ERISA.

### D. Some, if not all, of the Plaintiffs' claims are barred by the applicable statute of limitations.

The Plaintiffs do not offer a clear chronology of their claims, but they do state generally that certain un-itemized medical bills from 2017 and perhaps 2018 were not paid or not paid in a

---

[6] Although not necessary to the Court's Decision, Plaintiff UMWA's own publicly available website indicates that all Defendants were in good standing with the ROD Trust. A copy of the UMWA-BCOA website listing all Defendants as being in Good Standing with ROD Trust is attached as *Mot. Ex.* D. Even if this were not the case, this would not relieve the Plaintiffs of their obligation to follow the grievance procedures the Agreement.

timely manner. Complaint at ¶¶ 19, 27-30. The Complaint offers no concrete amounts or dates of medical bills not paid. The statute of limitations for filing a breach of contract claim under Section 301 of the Fourth Circuit is six months after the alleged breach occurred. *See Foy v. Giant Foods Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) *and White v. Nat'l Steel Corp.*, 742 F. Supp. 312, 327 (N.D. W.Va. 1989) aff'd in part, rev'd in part on other grounds, 938 F.2d 474 (4th Cir. 1991) (citing *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)); *see also Barton v. Creasey Co. Of Clarksburg*, 718 F. Supp 1284, 1298-88 (N.D. W.Va. 1989) aff'd, 900 F.2d 249 (4th Cir. 1990). The Plaintiffs, however, waited to file their Complaint until considerably more time had elapsed since many of the violations that they allege. Indeed, it is possible that more than six months passed between each of the Defendants' alleged NBCWA violations and the filing of Plaintiffs' Complaint.

Further, all health claims must be made to the Health Plan within 180 days and then, more importantly, any adverse decision must be appealed within 180 days. *Ex. B*, p. 36; *Ex. C.*, p. 50. Like the Plaintiffs' Section 301 claims, Plaintiffs have not complied with the specific deadlines set forth in the SPD for either Plan for at least some and perhaps all, of their claims.

This Court, therefore, should find that the Plaintiffs have failed to make the detailed factual allegations to support a finding that they acted within the statute of limitations and, therefore, should dismiss all their claims on timeliness grounds under Rule 12(b)(6).

IV.     **CONCLUSION**

The Plaintiffs have impermissibly brought claims regarding the Defendants' alleged NBCWA violations and Health Pan Claims before this Court, rather than resolving them through the Agreement's mandatory and binding grievance and arbitration procedure and the Claims Review Process of The Health Plan's Summary Plan Description. Finally, some – if not all – of

the Plaintiffs' claims are barred by the applicable status of limitations, since they were filed more than six months prior to the Plaintiffs' Complaint.  For these reasons, Defendants request that this Court dismiss the Plaintiffs' Complaint under Rule 12(b)(6) with prejudice, finding that the Plaintiffs have failed to state a claim upon which relief may be granted.

JUSTICE ENERGY CO. INC.;
KEYSTONE SERVICE INDUSTRIES,
INC.; BLUESTONE COAL
CORPORATION;
DOUBLE-BONUS COAL CO.; and
SOUTHERN COAL CORPORATION,

By Counsel:


/s/ *James P. McHugh*
Christopher D. Pence (WVSB No. 9095)
James P. McHugh (WVSB No. 6008)
Hardy Pence PLLC
10 Hale Street, 4th Floor (25301)
P.O. Box 2548
Charleston, WV 25329
Phone:  (304) 345-7250
Fax:  (304) 553-7227

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

JAMES E. GRAHAM II; DENNIS ADKINS;
ROGER WRISTON; and DAVID B. POLK;
on behalf of themselves and
others similarly situated; and UNITED MINE WORKERS
OF AMERICA INTERNATIONAL UNION,

    Plaintiffs,

v.                                              CIVIL ACTION NO. 1:19-cv-00597

JUSTICE ENERGY CO. INC.;
KEYSTONE SERVICE INDUSTRIES, INC.;
BLUESTONE COAL CORPORATION;
DOUBLE-BONUS COAL CO.; and
SOUTHERN COAL CORPORATION,

    Defendants.

## CERTIFICATE OF SERVICE

I, James P. McHugh, hereby certify that on the 5th day of November 2019, the foregoing ***"Memorandum of Law in Support of Defendants' Motion to Dismiss"*** was electronically filed with the Clerk of the Court through the CM/ECF System which will send electronic notification of such filing to counsel listed below:

        Charles F. Donnelly, Esq.
        General Counsel
        United Mine Workers of America
        1300 Kanawha Blvd., East
        Charleston, WV 25301

        Kevin F. Fagan, Esq.
        United Mine Workers of America
        18354 Quantico Gateway Drive, Suite 200
        Triangle, VA 22172
            *Counsel for Plaintiffs*

                /s/ *James P. McHugh*
                James P. McHugh (WVSB No. 6008)