## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JAMES E. GRAHAM II; DENNIS ADKINS
ROGER WRISTON; AND DAVID B. POLK;
On behalf of themselves and
Others similarly situated; and
UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION

                Plaintiffs,

        v.                              Civil Action No. 1:19-cv-00597

JUSTICE ENERGY CO. INC.;
KEYSTONE SERVICE INDUSTRIES, INC.
BLUESTONE COAL CORPORATION;
DOUBLE-BONUS COAL CO.; AND
SOUTHERN COAL CORPORATION,

                Defendants.

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

## INTRODUCTION

The above-captioned case concerns Defendants ongoing refusal to provide medical and prescription drug coverage to retirees at the level required by the parties' collective bargaining agreement. On August 15, 2019, James E. Graham II; Dennis Adkins, Roger Wriston; and David B. Polk; on behalf of themselves and others similarly situated ("the retiree Plaintiffs") and the United Mine Workers of America, International Union ("UMWA"), collectively herein referred to as "Plaintiffs", filed suit against Justice Energy Co., Inc.; Keystone Service Industries, Inc., Bluestone Coal Corporation; Double-Bonus Coal Co.; and Southern Coal Corporation ("Defendants"). (Doc. 1, Page ID # 1-15). The Complaint was brought pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.

In that Complaint, Plaintiffs allege that Defendants have failed and refused to administer, maintain, and fund their Employer Benefit Plans and to provide benefits thereunder, thereby breaching and violating their obligations under Article XX of the National Bituminous Coal Wage Agreement of 2016 ("the NBCWA") as adopted by the Memoranda of Understanding entered into by each of the Defendants.  As a result of Defendants' contractual breach, retiree plaintiffs have been deprived of medical and prescription drug benefits to which they are entitled and have incurred out of pocket expenses and debts for medical and prescription drug benefits which should have been covered.  Plaintiffs seek injunctive relief, a declaration of future rights, and damages.

On November 5, 2019, Defendants filed a Motion to Dismiss and a Memorandum in support thereof under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 4, Page ID # 52-54).  Defendants allege that Plaintiffs have failed to exhaust all available administrative remedies and that the Complaint was not timely filed.  (Doc. 5, Page ID # 101-117).

Pursuant to Local Rule of Civil Procedure 7.1(a)(7), Plaintiffs file this Response in Opposition to Defendants' Motion to Dismiss.  For the reasons discussed below, Plaintiffs have stated a claim upon which relief may be granted and, as a result, Plaintiff's request that Defendants Motion to Dismiss be denied.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion for failure to state a claim upon which relief  may be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).  A court's determination regarding a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support its claim and would entitle it to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). That means that when considering a Rule 12(b)(6) motion, the court should accept

all well-pleaded allegations as true and should view the complaint in the light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir.1999); *Mylan Labs., Inc.*, 7 F.3d at 1134; and *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Wikimedia Foundation v. National Security Agency*, 857 F.3d 193, 208 (4th Cir. 2017). A court cannot favor "its perception of the relevant events over the narrative offered by the complaint," thereby "recasting 'plausibility' into 'probability.'" *Wikimedia*, 857 F.3d at 208.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT FAILED TO EXAHUST ADMINISTRATIVE REMEDIES BECAUSE DEFENDANTS HAVE FRUSTRATED THE CONTRACTUAL ARBITRATION PROCESS

In their Memorandum, Defendants argue that Plaintiffs has failed to state a claim upon which relief can be granted because they have failed to exhaust their administrative remedies. Defendants allege that Plaintiffs failed to utilize two separate administrative avenues: the contractual arbitration process under Article XXIII of the NBCWA and the mandatory claims review procedures in the subject Health Plans' Summary Plan Descriptions. (Doc. 5, Page ID # 109-114). Defendants cite authority for the proposition that labor disputes in general, and disputes under the NBCWA in particular, must be submitted through the mandatory grievance and arbitration procedure. (Doc. 5, Page ID # 109-112). Further, Defendants note that ERISA Health Plans are required to have a means by which claimants can appeal a denial of benefits, which must be exhausted before filing suit. (Doc. 5, Page ID # 112-114).

Defendant's arguments are without merit. Defendants contracted to participate in a specific, internal ERISA administrative process, for all disputes regarding retiree healthcare. Defendants then frustrated that administrative process by failing to make necessary contributions

to the related trust fund.  The alternative forums suggested by Defendants in their Memorandum, the Article XXIII arbitration process and the Claims and Dispute Resolution process in their Employer Benefit Plans, are each addressed in the NBCWA which explicitly sets forth that health insurance claims cannot be heard in either venue.  The NBCWA provides for one means to address health care and insurance coverage claims and that is the Resolution of Disputes Process in Article XX of the NBCWA.

Defendants are bound by NBCWA except to the extent that they and the UMWA have entered into localized Memoranda of Understanding modifying particular terms of the NBCWA. (Doc. 1, Page ID #5-7 ¶¶ 14-18).  None of the terms of the NBCWA that pertain here have been so modified.  All of the Companies are bound by Article XX of the NBCWA (entitled "Health, Retirement and Other Benefits") and are therefore required to provide health benefits to individuals who have retired from classified employment and presently draw pensions from the UMWA Health and Retirement Funds ("Funds").

As set out in Article XX(e)(4) and (e)(5), disputes over an employer's administration or provision of health and medical benefits under the Employer Benefit Plan is expressly made subject to a Resolution of Disputes  ("ROD") process for referral to the Funds' Trustees and a dedicated three-member Article XX arbitration panel for final and binding determination.[1]  To obtain the benefit of this UMWA Health and Retirement Funds resolution process, however, an employer must make the requisite payments to a "ROD Trust."[2]  As noted in the Complaint, at all times relevant to the instant suit, Defendants have failed to contribute to the ROD trust.  (Doc. 1,

---

[1] In their Memorandum, Defendants argue that the ROD Process from Article XX does not apply to the instant dispute.  (Doc. 5, Page ID #114-115).  However, the NBCWA provides that all "[d]isputes arising under this agreement with regard to the Employer benefit plan . . . shall be referred to the Trustee" through the ROD process.  NBCWA Article XX(e)(5).

[2] The requirement to pay into the ROD Trust Fund in order to maintain access to the ROD process is contained in a Memorandum of Understanding on the UMWA-BCOA ROD Trust which governs the ROD Process, attached here as Attachment 1.

Page ID # 9, ¶ 23).  As such, they have intentionally repudiated the only arbitral dispute resolution forum available to its retirees and the Union.

It is settled law that an employee or other individual (such as, in this case, a retiree) who is subject to a grievance-arbitration process will not be required to invoke and exhaust that procedure if the employer's conduct has served to repudiate the procedure itself, rendering reliance on it a futility.  *Samosky v. United Parcel Service*, 944 F.Supp. 2nd 479, 511 (S.D.W.Va. 2013), *citing Vaca v. Sipes,* 386 U.S. 171, 185 (1967) (Noting that "an obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures." (citations omitted).  In such a situation the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action).

An employer's repudiation may take the form of an express refusal to abide by contractually established grievance and arbitration procedures, or conduct that renders the employer noncompliant with the grievance-arbitration process.  *Garcia v. Eidal Int'l Corp.,* 808 F.2d 717, 721-722 (10th Cir.1986).  Accordingly, where an employer's conduct amounts to a repudiation of arbitration procedures set forth in the collective bargaining agreement, the affected employee may sue the employer without first exhausting the contractual grievance machinery. *Wyatt v. Interstate & Ocean Transp. Co., 439 F. Supp. 1310 (E.D. Va. 1977).*

Having frustrated the ROD process, Defendants argue in their Memorandum that there are two alternative dispute resolution procedures that the Plaintiffs should have utilized before filing suit: the contractual arbitration procedures in Article XXIII and the Claims and Dispute Resolution procedure contained in their Employee Benefit Plans.  (Doc. 5, Page ID # 109-114).  However, the collective bargaining agreement that Defendants signed explicitly denies those forums jurisdiction to hear disputes over healthcare.

5

In its Memorandum, Defendant cites extensively to Article XXIII of the NBCWA and to judicial decisions regarding that provision to argue that Plaintiffs should have availed themselves of the grievance and arbitration process before filing suit.  (Doc. 5, Page ID # 103, 109-112). However, Defendants fail to address Article XX(e)(5), which specifically provides that disputes arising under the Agreement regarding Employer Benefit Plans " shall not be processed under the provisions of Article XXIII (Settlement of Disputes)".   In light of that express contractual prohibition, the legal authority cited by Defendants does not apply to the claims at issue in this case.  By adopting the terms of the NBCWA, as per Defendants' Memoranda of Understanding with the UMWA, the Companies have agreed to Article XX's prohibition of the processing of health benefit disputes through the contractual grievance-arbitration process of Article XXIII, and Article XXIII arbitrators are without authority to hear Article XX disputes.[3]  Consequently, the contractual grievance-arbitration process is deliberately unavailable for the resolution of Article XX disputes.

It should be further noted that Article XXIII sets out the grievance-arbitration process for active or laid off employees[4] (of which the Plaintiff retirees are neither) to resolve matters arising under the collective bargaining agreement outside of the purview of Article XX.

---

[3] *See,  GKN Aerospace,* 431 F.3d 624 at 628 (8th Cir. 2005); *United States Postal Serv. v. Am. Postal Workers Union,* 204 F.3d 523, 527 (4th Cir. 2000) (Held, an arbitrator only has the authority to resolve disputes the parties have made subject to the collective bargaining agreement).

[4] Article XXIII is designed for active and laid off employees, not retirees.  Article XXIII(c)(1) requires that "(t)he Employee will make his complaint to his immediate foreman who shall have the authority to settle the matter."   Retired miners and their dependents are not "employees" and they do not have an "immediate foreman."  It is unlikely that Defendants actually intend for retiree Plaintiffs to enter active mine sites in order to obtain and fill out Article XXIII grievance forms for submission to mine management officials.  By its plain terms, this grievance-arbitration procedure exists for the benefit of current employees to resolve contractual disputes over such matters as discipline and discharge, lay off and recall, work jurisdiction and work assignments, and the like.

Likewise, The Defendants' Employer Benefit Plan claims and dispute resolution process cannot serve as an adjudicative forum for the retirees' claims. Under the NBCWA, any administrative internal processes for resolution of disputes that may be referenced in an insurance carrier's benefit plan do not supplant Article XX(e)(4) and (e)(5). In their Memorandum, Defendants cite to Article XX, section (c)(10) for the proposition that they had the option to use a private carrier to provide healthcare. Defendants argue that Plaintiffs are therefore required to follow their private carrier's "very specific and mandatory requirements for Claims and Dispute Resolution." (Doc. 5, Page ID # 105). In making this argument, the Defendants excluded a significant portion of the contractual language, specifically the entire second paragraph of the cited section. Article XX, section (c)(10) provides, in whole:

> Active miners and their surviving spouse and dependents, and pensioners from the 1974 Pension Plan, will receive health care provided by their Employer through insurance carriers. Each Employer for which the BCOA is authorized to represent for negotiations of this Agreement shall have the option of using the UMWA Health and Retirement Funds to administer such benefits. The Employer shall have the sole discretion to cease using the UMWA Funds for the administration of its benefits at any time and for any reason, provided that it commences the provision of such benefits through its individual Employer Plan without disruption.
>
> **The Trustee of the UMWA Health and Retirement Funds shall resolve any disputes, as provided in Section (e)(5), including excessive fee disputes, to assure consistent application of the health plan provisions in the Employer Benefit Plans** and of the managed care programs authorized by this Agreement.

(Emphasis Added).

Defendants again ignore inconvenient provisions of the collective bargaining agreement that do not serve their argument. Plaintiffs do not dispute that Defendants had the right to contract with a private insurance company to administer their healthcare benefits, but the collective bargaining agreement explicitly states that the Funds shall resolve *any* disputes and explains why that is necessary: to ensure the consistent application of health plan provisions in the Employer Benefit Plans. Defendants can contract with a third party to administer their Benefit Plans, but

Defendants have expressly agreed that the Funds' ROD process remains the sole contractual forum for resolving healthcare disputes. As noted above, Defendants have not paid ROD contributions and therefore the ROD process is not available to them.

In sum, the parties' collective bargaining agreement contains a single method of dispute resolution regarding retiree healthcare benefits: the ROD process. Defendants have frustrated the ROD process by failing to contribute to the related trust fund. The other forums that Defendants assert Plaintiffs should have exhausted before filing this Complaint do not have jurisdiction to hear the claims at issue here. As a result, Plaintiffs have not failed to exhaust their administrative remedies and Defendants' Motion to Dismiss should be denied.

## II.    The Complaint Was Timely Filed under § 301 of the LMRA and § 502 of ERISA

In their Memorandum, Defendants challenge the timeliness of the Complaint pursuant to Rule 12(b)(6). Specifically, Defendants argue that the Complaint does not contain a "clear chronology of claims" and that certain bills might fall outside of the statute of limitations period for filing a contract claim. (Doc. 5, Page ID #115-116).

Defendants are better positioned to know the date of medical service and the amounts of unpaid bills than Plaintiffs. Insured patients seeking medical care do not generally receive bills at the time of service. They simply present their medical or prescription drug coverage card and the provider then bills the insurer. The retiree Plaintiffs have followed this procedure. The retiree Plaintiffs sometimes do not learn that Defendants have failed to pay a covered medical bill until weeks or months after receiving medical service. If Defendants do not know how much money they owe the retiree Plaintiffs, they could simply contact the third-party administrator of their health plans and inquire as to what covered medical procedures have not been paid.

Plaintiffs note that it has filed claims under both Section 502 of ERISA and Section 301 of the LMRA. For the reasons outlined below, claims under both statutes are timely.

In their Memorandum, Defendants argue only that Plaintiffs' Section 301 claims are untimely.  (Doc. 5, Page ID # 115-116).  However, Counts III, IV, and V of the Complaint concern claims brought under Section 502 of ERISA, 29 U.S.C. § 1132.  (Doc. 1, Page ID # 11-13, ¶¶ 33-45).  ERISA provides no explicit limitations period for bringing a private cause of action under Section 502.  *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1987).  Therefore, courts borrow the limitations period for contract claims under state law.  *Id*.  In West Virginia, the statute of limitations for a written contract is ten (10) years.  W. Va. Code § 55-2-6; *See also Caldwell v. Standard Ins. Co.*, No. 2:14–cv–25242, 2015 WL 4727378, at *7 n. 7 (S.D. W.Va. 2015) (noting that under ERISA there is no explicit limitations period and, therefore, W.Va Code § 55-2-6 applies); *Fanase v. Liberty Life Assur. Co. of Boston*, No. 5:10CV92, 2011 WL 1706531, at *5 (N.D. W.Va. 2011) (10-year statute of limitations applies to ERISA claims in West Virginia).  All of Plaintiffs claims accrued within the ten-year statute of limitation period.

With respect to Plaintiff's claims under §301, the Labor Management Relations Act does not provide a specific statute of limitations, and courts reviewing claims under that section must therefore borrow an appropriate limitations period from the most closely analogous statute of limitations.  Cases that borrow from analogous state breach of contract actions are typically those brought by a union to vindicate the rights of its members, or actions brought by employees for an employer's breach of collective bargaining agreement that does not assert that the alleged harm was caused, in part, by the union's failure to fairly represent them.  *See Int'l Union, United Auto. Workers of Am. v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–04 (1966).

A shorter six-month limitations, borrowed from the National Labor Relations Act's Section 10(b) limitations period, may apply where an employee files a "hybrid" cause of action against both the employer for breach of contract under Section 301 of the LMRA and against the union for "discriminatory, dishonest, arbitrary, or perfunctory... (representation) as to breach its duty of fair representation" *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164

(1983).   The principals of *Hoosier Cardinal* were again expressed by the Supreme Court in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), in which it described the *DelCostello* holding as a "closely circumscribed exception" to "the general rule that statutes of limitation are to be borrowed from state law." *Id.* at 324, 109 S.Ct. 621.

Like the *Hoosier Cardinal* case, the allegations set forth in the Complaint presents a straightforward breach of Section 301 contract action which must look to the West Virginia limitations period for breach of contract claims.   The case of *Takki v. Beth Israel Deaconess Hosp.-Plymouth, Inc.*, No. CV 18-10099-FDS, 2018 WL 2247234, at *3 (D. Mass. May 16, 2018), is instructive here.   There, the federal district court applied the distinction between such hybrid cases and "straightforward claims" and recognized that where the plaintiff was not able to avail herself of grievance-arbitration proceedings under the collective bargaining agreement, and had no reason to bring a duty of fair representation claim against the union, her case was not the "hybrid" variety but rather a straightforward breach of contract claim against the employer under Section 301 of the LMRA.   As such, the court's review of her claim that the employer breached the collective bargaining agreement was subject to the Massachusetts state statute of limitations of six years, *citing DeGrandis v. Children's Hosp. Boston*, 806 F.3d 13, 19 (1st Cir. 2015).  *See also, Local Union 2-2000 United Steel v. Coca-Cola*, 547 F. App'x 707, 711 (6th Cir. 2013) (Where plaintiffs bring a §301 LMRA breach of contract action against their employer and do not allege that the Union breached its duty of fair representation to them, the case more closely resembles a straightforward *Hoosier Cardinal* breach of contract claim and the state statute of limitations period applies), *and International Union of Elevator Const. v. Home Elevator Co.*, 798 F.2d 222,

226, 227–28 (7th Cir.1986) (The straightforward nature of a union's claim for unpaid wages warranted the application of the state statute of limitations).[5]

In their Memorandum, Defendants assert that any claims arising under a collective bargaining agreement must be subject to a six month statute of limitations, and in support thereof, cite cases that are inapposite to the Union's claims in this case.  In *Barton v Creasey Co of Clarksburg*, 718 F.Supp. 1284 (N.D.W.Va. 1989) aff'd 900 F.2d 249 (4th Cir. 1990), plaintiffs' state law cause of action for unpaid vacation pay was removed by the defendant employers to federal court, and ultimately held to be preempted by Section 301 of the LMRA and governed by the terms of the collective bargaining agreement.  The defendants in *Barton* asserted a six-month statute of limitation for the resolution of the dispute under the collective bargaining agreement, and in granting the companies' motion to dismiss, the Court emphasized that the plaintiffs " ha(d) not presented the Court with any arguments which would dispute the untimeliness of the complaint if it were proceeding under § 301 of the LMRA."  718 F. Supp. at 1288.  Presumably in *Barton* the grievance-arbitration process for the unpaid wage claim was available to the employee plaintiffs for resolution of the dispute.  As discussed above, in this case, Defendants have specifically and intentionally made the arbitral ROD dispute resolution unavailable to Plaintiffs by their failure to remain current on their payments into the ROD Trust.

Similarly, *Foy v Giant Food Inc,* 298 F.3d 284 (4th Cir. 2002) cited by Defendants, an employee covered by a collective bargaining agreement brought suit in state court asserting that the employer's decision to discharge him entitled him to remedies under state law for intentional infliction of emotional distress and malicious prosecution.  The employer removed the state action to federal court and asserted that the six month statute of limitations applied.  The court agreed

---

[5] This action is not, and cannot be recast as, a hybrid DFR claim because such claims are only available to current employees not, as here, retirees.  *See Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971).

because the termination claim was one which was subject to interpretation of the collective bargaining agreement.  Finally, in *White v. National Steel Corp.*, 938 F.2d 474 (4th Cir. 1991), state law claims preempted by Section 301 of the LMRA were those whose resolution could be obtained by interpreting the terms of the collective bargaining agreement. Again, the employees' redress in those cases for claims arising under the collective bargaining agreement would have been through the arbitration process available to them -- a process that the Defendants herein have made unavailable to the Plaintiffs.

Even assuming that a six month limitations period is applicable to Plaintiffs Section 301 breach of contract claim, Defendants' conduct of in the form of its failure to make timely payment of benefits, and to otherwise resolve disputes in connection therewith through the ROD process, has served to equitably toll it.  Indeed, Defendants' obligation to administer the Employer Benefit Plan and to provide health benefit coverage to the Retirees is ongoing, and its violative conduct has been ongoing.

The retiree Plaintiffs have experienced ongoing difficulty in obtaining payment for medical care, sometimes even after the insurer informed retirees that their claims were covered.  This is not merely a dispute over individual healthcare determinations, but a continuing refusal by Defendants to pay covered claims.  That refusal continues to this day.  While the retiree Plaintiffs began experiencing trouble with their insurance coverage in 2017, Defendants failure to maintain the level of health care provided for in the contract is ongoing.  The retiree plaintiffs continue to receive bills and collections notices with respect to medical procedures that should be covered by insurance provided by the Defendants.  The retiree Plaintiffs continue to accrue additional, unpaid bills when seeking medical care.  Payment on claims is intermittent and no explanation is given when payment is not made.  Defendants contracted to deliver a certain level of healthcare and prescription drug coverage and are not providing it.

A continuing violation looks to related conduct that occurs within the six month period and preceding the six month period, as well. *Guessous v. Fairview Property Invs., LLC*, 828 F.3d 208, 221–22 (4th Cir. 2016); *Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134, 139-140 (4th Cir. 2007).  That is specifically the cyclical pattern of misconduct that is present here. The Defendants have remedied non-payment of benefits to retirees on a stop-and-start basis, forcing Plaintiffs into a repetitive cycle of notifications and demands to obtain in some instances a degree of remedial action and other times not, only to renew the pattern again and again.[6]

As an illustration of the ongoing nature of the Defendants' contractual violations, Plaintiffs note that on July 1, 2019, September 17, 2019, and November 4, 2019 (the day before this Motion to Dismiss was filed), Plaintiffs' medical and prescription drug coverage was cancelled without warning.  Retirees attempted to fill prescriptions and were told that they did not have coverage.  In September 2019, a retiree was denied prescription medication necessary for an upcoming bone marrow transplant.  In November 2019, a retiree was denied medication necessary to prevent rejection of a liver transplant.  The UMWA contacted Defendants and coverage was later restored. But there is simply no basis to the claim that the violations of the collective bargaining agreement are in the past.  Defendants were not now providing the level of healthcare that they agreed to provide at the time the Complaint was filed and they are not providing that level of healthcare today.

---

[6] At trial, Plaintiffs will demonstrate that the retiree Plaintiffs and the UMWA have engaged in an ongoing dialogue with Defendants regarding unpaid claims and other issues related to retiree healthcare.  That dialogue included e-mails, telephone conversations, and letters over a period of many months.  Plaintiffs did not spring this lawsuit on Defendants.  Defendants were well aware of the problems experienced by the retiree Plaintiffs and did not resolve those issues.

**CONCLUSION**

The Complaint states a claim upon which relief can be granted and was timely filed.

Further, Plaintiffs have not failed to exhaust its administrative remedies.  This matter is timely.

Therefore, Defendants' Motion to Dismiss should be denied.

<div style="margin-left:40%">

Respectfully Submitted,


_____/s/ Charles F. Donnelly_____
Charles F. Donnelly – WVSB No. 1039
General Counsel
United Mine Workers of America
1300 Kanawha Boulevard East
Charleston, West Virginia 25301
(304) 346-0341
(304) 346-1186 (fax)
cdonnelly@umwa.org


_____/s/ Kevin F. Fagan_____
Kevin F. Fagan, Esquire - WVSB No. 5216
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, Virginia 22172
(703) 291-2425
(703) 291-2448 (fax)
Email:  kfagan@umwa.org

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **19th day of November 2019**, I electronically filed the

foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO**

**DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to CM/ECF participants.  All others were served via e-mail and by 1st class U.S. mail.

James P. McHugh– WVSB No. 6008
Christopher D. Pence – WVSB No. 9095
10 Hale Street, 4th Floor (25301)
P.O. Box 2548
Charleston, WV 25329
Phone: (304) 345-7250
Fax: (304) 553-7227

_____/s/ Kevin F. Fagan_____
Kevin F. Fagan, Esquire - WVSB No. 5216
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, Virginia 22172
(703) 291-2425
(703) 291-2448 (fax)
Email:  kfagan@umwa.org